RICHARD JONES *vs.* ANNA KIRKPATRICK, Administratrix, and others.

## October Term, 1876.

SALE OF LAND WITH CONDITION, ON DEFAULT OF PAYMENT, THAT THE CONTRACT BE ONE OF RENTAL.—Where a sale of land was evidenced by an ordinary bond for title, with a condition that, if the vendee makes default of payment of any of his notes, the agreement may be considered a contract of rental at will at a fixed rent, and by a written obligation of the vendee to perform the contract, and on failure to pay any of his notes at maturity, to deliver possession of the land to the vendor upon demand, the condition is introduced only for the benefit of the vendor, and is subject to his election.

ELECTION BETWEEN HEIR AND NEXT OF KIN.—If the heir upon whom descends the realty of an intestate, and the next of kin who takes the personalty, are different persons and have adverse interests, there can be no election, but the parties must take according to the character of the estate at the death of the intestate impressed upon it by his act, whatever may be its actual form.

*M. T. Bryan,* for complainant.

*M. C. Goodlett,* for Kirkpatrick.

—— *Galbraith,* for the Roscoes.

THE CHANCELLOR :—This is a triangular litigation, consisting of the original bill and cross-bills, over an instrument

written, it seems, in its present "questionable shape" in order to prevent litigation.

On the 8th of July, 1875, J. R. Kirkpatrick sold to the complainant a tract of land in this county, and gave his bond to make him a good warranty title upon the payment of the purchase money. The consideration recited is $980, to be paid by instalments, for which the complainant executed and delivered to the vendor his five notes of even date with the bond, the first for $200, payable one day after date, secured by orders on the county trustee for the same amount, and the other notes payable respectively on the first of August, 1876, 1877, 1878, and 1879, with 10 per cent. interest from date. The instrument contains, also, immediately following the recital of the consideration notes, this stipulation: "It being expressly understood and agreed, by and between the said J. R. Kirkpatrick and the said Richard Jones, that, in the event the said Richard Jones makes default in the payment of any of the above said notes, this indenture is to be considered a contract for rental of the hereinafter described land, and the said J. R. Kirkpatrick and Richard Jones are to stand, in the relationship of landlord and tenant towards each other, the said Richard Jones to be regarded as a tenant at will only; and all payments of the said Richard Jones upon said notes prior to said default to be allowed as credits on rental due at final settlement, allowing $100 per annum as the rental of said land; and in the event said payments shall exceed the rental due, the said J. R. Kirkpatrick shall pay to the said Richard Jones the excess, and, upon final settlement, cancel and deliver up the aforesaid notes." This instrument was signed by Kirkpatrick only. At the foot of it is an agreement, signed by Jones, in these words: "I, Richard Jones, do by these presents bind myself, my heirs, and assigns, to stand to, and abide by, the above contract in every particular, and especially, in the event of failure to pay off said notes at maturity, or any one of them, do I bind myself, my heirs, and assigns, to deliver possession of said land to the said J. R. Kirkpatrick upon his demand."

J. R. Kirkpatrick died, during the next month after the execution of these contracts, intestate, leaving the defendant Anna Kirkpatrick, his widow, who qualified as administratrix of his estate, and the defendants W. S., James, and M. L. Roscoe, maternal half brothers, as his only heirs at law. Toward the end of the year 1875 the complainant notified the administratrix that, owing to his failure to pay his first note for $200, due the day after date as aforesaid, he chose to consider the contract of sale and purchase as at an end, that he was only a renter at will, and that he would not want the land during the next year. And in January he tendered the administratrix the key of the houses on the the premises, and $50 for six months rent, and abandoned possession of the land. This bill was filed, on the — of February, 1876, for a settlement with the administratrix and heirs, upon the foregoing hypothesis of his rights, and to have his notes and collaterals delivered up to him.

On the 30th of March, 1876, the defendant Anna Kirkpatrick answered the bill, and then filed her answer as a cross-bill against the complainant and her co-defendants. The object of the cross-bill is, as against the complainant, to enforce the vendor's lien for the purchase money; and, as against the heirs of the intestate, to set up her right to collect the purchase money, and, if mistaken in her rights in this regard, then to have dower in the land. The heirs, in their answer both to the original and cross-bill, express their willingness to treat the sale as at an end under the terms of the contract, and their intention to make this election when the note of the complainant payable the 1st of August, 1876, matures. No supplemental bill has been filed since that date.

There is no evidence except an admission of the tender by the complainant of $50, as rent, as claimed by him in his bill. The rights of all the parties turn upon the construction of the instruments of the 8th of July, 1875. And they do not present any serious difficulty. The first is only an ordinary bond for title, upon a valid sale recited on its

face, with a condition that, if the vendee makes default in the payment of any of his notes, the agreement may be considered a contract of rental at will, and at a fixed rate of rent. Of course the stipulation is introduced only for the benefit of the vendor, for, otherwise, there was no contract at all. A sale of property upon a promise to pay the price at a certain day, provided the purchaser chooses to do so, is clearly a *nude pact*. *Gillespie* v. *Edmonston*, 11 Humph. 553. The parties had no intention of doing anything so absurd. The vendor binds himself to make title to certain land at a certain price, to be paid by instalments, and adds, if the purchaser makes default in the payment of any of these instalments, the agreement " is to be considered"— meaning by him, the vendor, or, at his option—a contract for rental. And this is made perfectly plain by the, written obligation of the complainant, which binds him to perform the contract in every particular, and especially, in the event of his failure to pay any of his notes at maturity, to deliver possession of the land to the vendor " upon his demand." It is with the latter to take the initiative, and, by making demand, to change the character of the transaction. The very questions argued in this case have been twice before our supreme court, and formally adjudged. In *Caruthers* v. *McBurney*, 3 Sneed, 590, a bill and cross-bill were filed to test the liability of a purchaser of land under a contract of sale, evidenced by a bond for title, as in this case. The purchase money was to be paid in instalments, and the title bond contained this clause : " But should said first payment not be made on or before the 1st of May next, then this contract to be void ; but in the event it is, and the two others are paid, I bind myself to make a good warranty deed." The language, it will be noticed, is more positive than in the instrument before us, and was not supplemented by any stipulation of the purchaser explanatory of the meaning of the parties. It says, plainly, if the first payment is not made, "then this contract is to be void," and the Chancellor thought the purchaser could treat it as void

accordingly. But the supreme court reversed the decree, and held the clause as " simply a condition to stimulate the vendee to promptness in payment, upon the failure of which, at the election of the seller, he should lose the benefit of his purchase." They add, that " to permit a party to take advantage of his own wrong and negligence, in failing to comply with his contract, would certainly be against all correct principles, and in conflict with the first rules of morality and honesty." To the same effect is *Lane* v. *Manning*, 8 Yerg. 435.

As between the complainant and the administratrix, it is clear the bill would have to be dismissed with costs, and a decree rendered on the cross-bill for a sale of the property in satisfaction of the purchase notes. But the case is complicated by the fact that the interest of the heirs of the intestate is in conflict with the interest of the widow. If the contract of sale be maintained, the purchase money would be personalty, and distributable, as such, to the widow ; whereas, if the sale be turned into a lease, the land descends, as realty, to the other defendants, the intestate's half brothers.

Undoubtedly the intestate might have elected, after the lapse of a reasonable time in which to collect the collaterals, to have demanded payment of any balance due upon the first note given for the purchase money, and, on the failure of the complainant to pay, to have demanded possession of the land, or notified the complainant that he would be thereafter treated as a tenant at will. The death of the intestate occurred so soon after the contract was made that the right of election can scarcely be said to have become absolute in him. And it is not insisted that he ever made any election. The lapse of time subsequent to his death has certainly been sufficient, especially since the maturity of the note of the 1st of August, 1876, to raise the right of election if, under the circumstances, it survives to any one.

In equity, that which is agreed to be done is considered

as done, and, therefore, land agreed to be sold by a valid contract will be considered as money. *Fletcher* v. *Ashburner,* 1 Bro. C. C. 497. And, although upon the death of the vendor before conveyance the legal title to the land devolves upon the heir, · yet the administrator will be entitled to receive the purchase money, and to enforce the contract against the wishes of the heir. *Thornbrough* v. *Baker*, 1 Ch. Cas. 283 ; *Stephenson* v. *Yandle*, 3 Hayw. 109 ; *Bubb's Case*, 2 Freem. 38 ; *Lacon* v. *Mertins*, 3 Atk. 1. If in such case the heir is also the distributee, and the claims of creditors may be otherwise satisfied, he might elect to take the land instead of the money, the purchaser consenting, or the right of election being in the vendor by contract. But if the heir upon whom descends the realty, and the next of kin who takes the personalty as distributee, are different persons, and their interests adverse to each other, there can be no election, " but the interest must be taken as fortune has directed," for there is no equity between the parties thus entitled in different rights by which one can claim in preference to the other. The parties take according to the character of estate at the death of the ancestor impressed upon it by his act, whatever may be its actual form. *Lord Compton* v. *Oxenden*, 2 Ves. jr. 265 ; *Walker* v. *Denne*, 2 Ves. jr. 175 ; *Wheldale* v. *Partridge,* 8 Ves. 235. The rule from the earliest times seems to have been, in all cases where the dispute is between representatives, that the heir or administrator shall have the fund according to the will or contract of the person who gave or created it. *Scudamore* v. *Scudamore*, Prec. Ch. 543 ; *Attorney General* v. *Day*, 1 Ves. 218 ; *Fletcher* v. *Ashburner*, 1 Bro. C. C. 497 ; *Ackroyd* v. *Smithson*, 1 Bro. C. C. 503 ; *Tucker* v. *Loveridge*, 2 De G. & J. 650. Our own decisions are in accord. *Roberts* v. *Jackson*, 3 Yerg. 76 ; *McCormick* v. *Cantrell*, 7 Yerg. 615 ; *Paul* v. *York,* 1 Tenn. Ch. 547. And see *Dixie* v. *Wright*, 32 Beav. 662, where a fund was impressed by law with the character of realty.

The original bill will be dismissed with costs, and the complainant in the cross-bill may take a decree declaring her right to have the land sold for the purchase money now due, subject to account for the proceeds of the collaterals. An account will be ordered to ascertain the balance of purchase money remaining unpaid. If the vendee so direct, or if, upon reference, it appear that the land, cannot be divided without great injury to the parties, the administratrix may have a decree for the sale of the whole land, under the Code, § 3565. She is also entitled to a decree settling her right to the funds as between her and the heirs. The costs of the cross-bill will be paid by her out of the funds derived from the sale.